IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH LEYVA,

    Defendant.

Case No. 1:20-cr-01902-MLG

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
JOSEPH LEYVA'S MOTION TO SUPPRESS STATEMENTS**

On August 3, 2020, members of the New Mexico State Police attempted to initiate a traffic stop on a vehicle travelling over 100 miles per hour without its headlights illuminated. Doc. 86 at 1. The driver of the vehicle did not stop as requested and subsequently led police on a high-speed chase through Clovis, New Mexico. Doc. 115 at 1. The vehicle's occupants allegedly discharged firearms at police during the pursuit. Doc. 131 at 3. In connection with this incident, Defendant Joseph Leyva was charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Doc. 14 at 1.

On August 18, 2020, Lieutenant Gerardo Hernandez interviewed Leyva while he was in custody. Before commencing the interrogation, Hernandez read (albeit at an unreasonably speedy pace and without much effort to ensure he was being understood) to Leyva his *Miranda* rights from a card in his wallet. Gov't Ex. 3 at 2:12-36 (lodged with Court). He asked Leyva if he understood those rights, to which Leyva responded, "Yes sir." *Id.* at 2:36-39. Hernandez then followed up with, "Do you still wanna talk to me?" *Id.* at 2:38-40. Leyva responded "Mhmm," indicating a response in the affirmative. *Id.* at 2:39-41. Hernandez proceeded to ask Leyva what his name was, to which Leyva replied, "Joseph." *Id.* at 2:41-44. Leyva was asked other basic,

1

identifying questions before Hernandez switched gears to the August 3 incident. *Id.* at 2:45-4:00.[1] Leyva denied involvement. *Id.* at 4:00-8:08. Eventually, Leyva said, "Just call my lawyer, man, [because] you're falsely accusing me of something I didn't do." *Id.* at 8:09-13. Hernandez replied, "Well we're done then." *Id.* at 8:11-15. At that moment, the interview terminated and Hernandez escorted Leyva out of the room. *Id.* at 8:20-35.

On September 23, 2020, Leyva (and his co-defendant Patrick Gilman) was taken into federal custody in connection with the incident. He now moves to suppress the statements given during his interrogation.[2] *See generally* Doc. 115. For the reasons explained below, the Court finds Leyva's argument unpersuasive and denies the motion.

## DISCUSSION

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. This privilege against self-incrimination requires the suppression of statements given by a suspect during a custodial interrogation without a prior warning. *Miranda v. Arizona*, 384 U.S. 436, 471 (1966). "Under *Miranda*, law enforcement officers must advise a suspect who is subjected to custodial interrogation that he has the right to remain silent, that statements can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed." *United States v. McCluskey*, 893 F. Supp. 2d 1117, 1138 (D.N.M. 2012).[3]

---

[1] At one point, Leyva disclosed that he had been "shot in the head." *Id.* at 3:35-40. Medical records indicate that, on or around July 13, 2020, Leyva sustained an "abrasion and laceration to his forehead" upon being "jumped by [two] people" while asleep in his bedroom. Doc. 115-1 at 1.

[2] The Government states that it "does not currently anticipate introducing Leyva's statements in its case-in-chief because the statements he made . . . were self-serving[.]" Doc. 131 at 1. Regardless, the Court offers its analysis of the admissibility of those remarks to police.

[3] The parties do not dispute that Leyva was subjected to a custodial interrogation. *See* Doc. 115 at 4; Doc. 131 at 4. It is also undisputed that Hernandez provided Leyva with the requisite *Miranda* warnings before commencing the interrogation. *See* Doc. 115 at 3; Doc. 131 at 3. Nonetheless, the

An individual in custody may waive these protections if the decision to do so is done "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. To determine whether Leyva's statements to Hernandez are admissible, the Court must address whether Leyva waived his *Miranda* rights and, if so, whether he did so voluntarily, knowingly, and intelligently.

I.  **Leyva impliedly waived his *Miranda* rights by continuing to respond to Hernandez's questions.**

Leyva challenges whether his "waiver" was validly elicited, claiming that "Hernandez never explicitly asked [ ] Leyva if he was waiving his rights" under *Miranda*. Doc. 115 at 6. But "[n]othing in *Miranda* requires an officer to ask specifically if the suspect waives his rights." *United States v. Varela*, 576 F. Appx. 771, 776 (10th Cir. 2014). Instead, implicit waiver can be "inferred from the defendant's actions and words." *United States v. Toro-Pelaez*, 107 F.3d 819, 825 (10th Cir. 1997) (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) ("An implicit waiver of the right to remain silent is sufficient to admit a suspect's statement into evidence." (internal quotation marks omitted)). By making an uncoerced statement to the police, "a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent[.]" *Berghuis*, 560 U.S. at 388.

Applying this legal authority to the facts presented, Leyva implicitly waived his *Miranda* rights by providing uncoerced responses to Hernandez's questions. Leyva responded in the

---

Court is concerned about the speed with which Hernandez read the warnings. *See* Doc. 150 at 86:25-87:2 ("Hernandez really blasts through the reading of the rights . . . . It was like an auctioneer, almost."); *see also United States v. Al-Saimari*, 982 F. Supp. 2d 1285, 1290-92 (D. Utah 2013) (granting the defendant's motion to suppress statements where a police officer read with "rapid speed" the warnings to the defendant who only had "survival language proficiency" in the English language because it was unclear whether the defendant understood the rights he was waiving when he consented to answer the officer's post-warning questions).

affirmative after Hernandez asked him if he understood his rights under *Miranda*. He continued to answer questions to confirm his name and provided answers to other basic, identifying inquiries before denying involvement in the August 3 incident.[4] Thus, "[w]hile Defendant did not expressly waive his *Miranda* rights during this interview, the record reflects that he understood his rights and engaged in conduct indicating waiver by answering the detective's questions." *United States v. Little*, Crim. No. 20-1258, 2020 WL 4923670, at *6 (D.N.M. Aug. 21, 2020).

**II.     Leyva's waiver was made voluntarily, knowingly, and intelligently.**

The next question is whether the Government has shown by a preponderance of the evidence that this implied waiver was made voluntarily, knowingly, and intelligently. To establish a voluntary waiver, "the [G]overnment must show (1) that the waiver was the product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving." *Toro-Pelaez*, 107 F.3d at 825. In making this determination, the Court considers the totality of the circumstances, including both the details of the interrogation and the characteristics of the accused. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The Government bears the burden of proving by a preponderance of the evidence that an individual's waiver was made voluntarily, knowingly and intelligently. *United States v. Burson*, 531 F.3d 1254, 1256 (10th Cir. 2008).

The Government has met its obligation here. First, the details of the interrogation cut against a finding of coercion: the interview was about six minutes long; it was conducted in a private room at the police station; only two officers were present with only one officer speaking during the entire encounter; there was no evidence of physical abuse or threats made against Leyva;

---

[4] While the facts present an interesting legal question, they have little practical import. Leyva provides no incriminating statements during the six-minute-long interrogation.

4

and Hernandez did not use false statements about evidence or promise leniency. *See Little*, 2020 WL 4923670, at *6. And, as discussed *infra*, as soon as Leyva invoked his right to counsel, that request was immediately and fully honored.

As for Leyva's characteristics, those too weigh against a finding of coercion. He is an adult (twenty-four years old at the time of the interrogation) of average intelligence with a ninth-grade education and no apparent mental defects who has worked as a general laborer and machine operator; responded appropriately to Hernandez's questioning; and has a lengthy criminal history suggesting familiarity with his rights under *Miranda*. Doc. 9 at 5-9; *see Smith v. Mullin*, 379 F.3d 919, 934 (10th Cir. 2004) (taking into account an accused's "prior experience with the criminal justice system" to show that "[t]he concepts encompassed by *Miranda* were not foreign to him"). Leyva clearly understood the rights he was waiving.

Nevertheless, Leyva avers that any waiver he made was not voluntary because he had been shot in the head several weeks prior and thus did not understand "what was going on." Doc. 115 at 5-6. Leyva relies on the case of *United States v. Trejo-Islas*, 248 F. Supp. 2d 1072 (D. Utah 2002), in support of his position, but his reliance on that decision is misplaced. Doc. 115 at 5-6. In *Trejo-Islas*, the defendant (who did not speak English) was involved in a traffic accident and sustained a head injury. 248 F. Supp. 2d at 1073-74. Investigators questioned the defendant only hours after the collision occurred and immediately following his discharge from the hospital. *Id*. at 1074-1075. The district court noted that the defendant

> had been awake since the early hours of the morning, was in a roll-over accident resulting in a fatality, was treated at the hospital for a head injury among other problems, had complained of pain but had not been able to take pain medication or sleep for any length of time in view of his head injury, and, apparently, had not eaten.

*Id.* at 1076. The district court also found that the defendant "did not understand what was said to

him" during the interrogation which was conducted in Spanish because "the Spanish spoken by [the officer] was confusing and included improper vocabulary and errors in verb and pronoun usage." *Id.* at 1075-76. In light of these facts, the district court suppressed statements the defendant made to police, reasoning that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights because of the "defendant's difficult circumstances on the day of the interview, coupled with an inadequate explanation of his rights delivered in confusing Spanish." *Id.* at 1079.

As the preceding discussion suggests, the *Trejo-Islas* decision arises from the specific circumstances before that district court, and there is nothing in the opinion suggesting that a lack of a knowing and intelligent waiver ineluctably arises from residual pain due to an earlier injury. *See United States v. Morris*, 287 F.3d 985, 989 (10th Cir. 2002) (holding that, despite experiencing pain from several gunshot wounds to the back which impacted his mental capacity, a defendant knowingly and intelligently waived his rights because he was "alert and responsive during the interview," "coherent in previous conversations with the agents guarding the room," and "demonstrated that he understood his right to remain silent"). Whatever broad legal principles can be gleaned from the *Trejo-Islas* opinion,[5] they are not applicable here given the very different facts presented. Indeed, as discussed above, Hernandez interviewed Leyva more than a month after Leyva sustained his head injury, and there is no indication Leyva was suffering from cognitive issues (unlike the defendant in *Trejo-Islas*). In addition, the video recording of the interview indicates that Leyva is at least bilingual in both Spanish and English, *see* Gov't Ex. 3 at 2:00, unlike the defendant in *Trejo-Islas* who did not understand English. In sum, the totality of circumstances indicate that Leyva freely and deliberately waived his right to remain silent, with a full understanding of the consequences. Because his waiver was valid, Leyva's statements are

---

[5] That decision is not binding on this Court and arose from a very unusual set of facts.

admissible.

### III. Leyva unequivocally invoked the right to counsel, and the interrogation properly ended thereafter.

"Any waiver, express or implied, may be contradicted by an invocation at any time." *Berghuis*, 560 U.S. at 387-88. To invoke the right to remain silent, the accused must make "a clear and unambiguous assertion of the right to remain silent." *United States v. Rambo*, 365 F.3d 906, 910 (10th Cir. 2004). Once the right is invoked, "further interrogation must cease." *Berghuis*, 560 U.S. at 388. In this case, Hernandez recognized that Leyva unambiguously invoked his right to counsel when he stated, "Just call my lawyer, man, [because] you're falsely accusing me of something I didn't do." Gov't Ex. 3 at 8:09-13. After Leyva invoked that right, Hernandez promptly terminated the interrogation, which was the proper course of action under *Berghuis*. *Id.* at 8:15-20. Accordingly, Leyva's statements need not be suppressed.

### CONCLUSION

For the foregoing reasons, the Court denies the motion to suppress. Doc. 115. It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA